# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | Case Number: 3:14-CR-498-M |
| DEBORAH PETTY, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Government's Supplemental Briefing on Venue [ECF No. 87] and the Defendant's Response [ECF No. 89], filed at the Court's request after the Defendant's oral motion for judgment of acquittal at the end of trial. For the following reasons, the Motion for Judgment of Acquittal is **DENIED.**

### I. Background

On January 31, 2017, a jury convicted Deborah Petty on all counts of the indictment. Counts One through Seven charged Petty with Identity Theft and Aiding and Abetting, in violation of 18 U.S.C. § 1028(a)(7) and 18 U.S.C. § 2. Count Eight charged Petty with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Pursuant to Federal Rule of Criminal Procedure 29, Petty has moved for a judgment of acquittal of all counts of the indictment on the ground that venue is not proper in the Northern District of Texas.

### II. Legal Standard for Motion for Judgment of Acquittal

Rule 29(a) requires the Court to enter a judgment of acquittal if the "evidence is insufficient to sustain a conviction" on the crime charged. Fed. R. Crim. P. 29(a). In that event,

1

the Court may set aside the jury's guilty verdict and enter an acquittal. Fed. R. Crim. P. 29(c)(2). A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998) (citing Fed. R. Crim. P. 29(a)). In assessing such a motion, the Court must consider the evidence, all reasonable inferences drawn from the evidence, and all credibility determinations in the light most favorable to the jury's verdict. *Id.* The Rule 29 standard does not require the evidence to exclude every reasonable hypothesis of innocence. *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). Rather, a judgment should be affirmed "if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Klein*, 543 F.3d 206, 212 (5th Cir. 2008) (quoting *United States v. Westbrook*, 119 F.3d 1176, 1189 (5th Cir. 1997)). Thus, the jury retains the sole authority to weigh any conflicting evidence and evaluate witness credibility. *Loe*, 262 F.3d at 432.

### III.     Analysis

Petty moves for judgment of acquittal on the ground that the Government failed to prove by a preponderance of the evidence that venue is appropriate in this district. More specifically, Petty argues that venue is not proper in the Northern District of Texas, because the evidence presented showed that the essential conduct elements in this case all occurred outside this district. The Government responds that Petty committed at least one act in furtherance of the identity theft crimes for which she was convicted in the Northern District of Texas, and accordingly, venue in this district is proper.

### a. Venue

The Court must first determine the proper test for venue in this case. Federal Rule of Criminal Procedure 18 requires the Government to prosecute "in a district where the offense was committed." Fed. R. Crim. P. 18. Additionally, continuing offenses that are "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *United States v. Cabrales*, 524 U.S. 1, 7 (1998). When an offense "consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (citing *United States v. Lombardo*, 241 U.S. 73, 77 (1916)). The Government bears the burden to prove by a "preponderance of the evidence that the trial is in the same district as the criminal offense." *United States v. Turner*, 586 F.2d 395, 397 (5th Cir. 1978).

In *Rodriguez-Moreno*, the Supreme Court confirmed that the "*locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it." 526 U.S. at 279 (quoting *Cabrales*, 524 U.S. at 1) (internal quotation marks omitted). In doing so, the court performs a two-step inquiry where the court "must initially identify the conduct constituting the offense" and then "discern the location of the commission of the criminal acts." *Rodriguez-Moreno*, 526 U.S. at 279; *United States v. Clenney*, 434 F.3d 780, 781 (5th Cir. 2005) (per curiam). "Venue should be narrowly construed." *United States v. Auernheimer*, 748 F.3d 525, 532–33 (3d Cir. 2014) (citing *United States v. Johnson*, 323 U.S. 273, 276 (1944)).

As to the first step, in order to identify the conduct that constitutes the offense, the Court scrutinizes the statute of conviction. *Id.* However, the verbs of the statute are not "the sole

consideration in identifying the conduct that constitutes an offense." *Rodriguez-Moreno*, 526 U.S. at 280. Although considering the verbs in the statute "certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language." *Id.* A test that solely looks to the verbs of the statute "unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed." *Id.* In *Clenney*, the Fifth Circuit found that the intent element of the international parental kidnapping statute could not serve as the basis for venue "because this element merely speaks to the offender's mens rea as he commits the conduct essential to the crime; it is plainly not an 'essential conduct element' as required by *Rodriguez-Moreno*." 434 F.3d at 782. Accordingly, to evaluate venue under step one, the Court must look to the essential conduct elements of the statute of conviction. *Id.*

However, it is important to distinguish essential conduct elements from "circumstance elements," which may not serve as a basis for establishing venue. *Rodriguez-Moreno*, 526 U.S. at 280 & n.4. In *Cabrales*, the Supreme Court considered whether venue for money laundering was proper in Missouri, where the laundered proceeds were unlawfully generated, or only in Florida, where the laundering transactions at issue occurred. *Cabrales*, 524 U.S. at 7; *see also Rodriguez-Moreno*, 526 U.S. at 280 & n.4 (discussing *Cabrales*). The Supreme Court, later reflecting on *Cabrales*, observed that the "existence of criminally generated proceeds" was only a "circumstance element" of money laundering, i.e., merely a fact that existed at the time the defendant performed her laundering acts. *Rodriguez-Moreno*, 526 U.S. at 280 n.4. Although the Government had to prove the issue to the jury to secure a conviction, it could not provide the basis for venue. Similarly, in *Strain*, 396 F.3d 689, 694 (5th Cir. 2005), the defendant was convicted of "harbor[ing] or conceal[ing] any person for whose arrest a warrant or process has

been issued under the provisions of any law of the United States, so as to prevent his discovery or arrest, after notice or knowledge that a warrant or process has been issued." *Id.* (internal quotation marks omitted). The Fifth Circuit found that the issuance of the warrant and the defendant's knowledge of it were "circumstance elements" of the harboring offense, because they "do not involve any proscribed conduct by the accused" and, accordingly, could not serve as a basis for establishing venue. *Id.*

Once the essential conduct constituting the offense has been identified in the first step, the Court turns to the second step of the *Rodriguez-Moreno* inquiry to "discern the location of the commission of the criminal acts." 526 U.S. at 279; *Clenney*, 434 F.3d at 781. In order to determine where the criminal acts occurred, the Court evaluates the trial record.

### b. Essential Conduct

To determine whether venue is proper in the present case, the Court applies the two-step inquiry articulated by the Supreme Court in *Rodriguez-Moreno*, 526 U.S. at 279; *Clenney*, 434 F.3d at 781. Under the first step, the Court identifies the conduct constituting the offense by scrutinizing the statute of conviction. Petty was convicted of seven counts of identity theft under 18 U.S.C. § 1028(a)(7), and one count of aggravated identity theft under 18 U.S.C. § 1028A(a)(1).

Concerning the identity theft charges, section 1028(a)(7) makes it a crime if a defendant:

> knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law.

18 U.S.C. § 1028(a)(7). The statute of conviction does not contain an express venue provision. Upon review of the parties' briefing and the Court's own investigation, it appears the Fifth

Circuit has not expressly identified which elements of identity theft are considered "essential" conduct.

The Court concludes that the essential conduct elements of identity theft under section 1028(a)(7) are (a) to transfer, possess, or use a means of identification of another person, and (b) in connection with a federal crime or state felony. *See United States v. Auernheimer*, 748 F.3d 525, 535 (3d Cir. 2014). The statute's plain language indicates that the law punishes one who (1) knowingly (2) transfers, possesses, or uses without lawful authority (3) a means of identification of another person (4) with the intent to commit, or in connection with, any violation of federal law or any state felony. *See United States v. Stephens*, 571 F.3d 401, 404–05 (5th Cir. 2009) (delineating the elements of a violation of aggravated identity fraud in 18 U.S.C. § 1028A(a)(l), which are virtually identical to § 1028(a)(7)); *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (same). The verbs in the statute, requiring the defendant to transfer, possess, or use a means of identity belong to another person, clearly proscribe certain conduct. Similarly, that the defendant acted in connection with a violation of federal or state law is an essential conduct element because it requires the defendant to act a certain way.

Similarly, the aggravated identity theft statute, 18 U.S.C. § 1028A, provides:

> [w]hoever, during and in relation to any [enumerated felony violation, including identity theft], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall [be guilty of the offense].

18 U.S.C. § 1028A(a)(1). Because the commission of a predicate felony offenses is an essential element of a section 1028A offense, the Court concludes that venue properly lies with respect to an aggravated identity theft offense in any district in which venue lies for the predicate. *See United States v. Magassouba*, 619 F.3d 202, 204 (2d Cir. 2010) (holding venue is proper in a

prosecution for aggravated identity theft in any district where the predicate felony offense was committed).

### c. Location of the Criminal Conduct

A careful review of the evidence presented at trial supports the conclusion that the Government proved by a preponderance of the evidence that Petty committed the essential conduct elements of identity theft and aggravated identity theft in the Northern District of Texas. Specifically, the evidence is sufficient to support the jury's verdict that Petty unlawfully possessed a means of identification of another person in connection with food stamp fraud in this district.

The Government's theory of the case was that Petty engaged in a continuing scheme to steal other people's personal identifying information and use that information to perpetrate food stamp fraud across several states, including Nevada, Florida, and Texas. The evidence at trial established that Petty worked at the Western Regional Center for Brain and Spine Surgery ("WRCBSS") in Nevada, in 2011 and 2012. During her employment at WRCBSS, Petty had access to patient files and obtained personal identifying information for WRCBSS patients in Nevada, including the seven named victims identified in the indictment. The government presented evidence that, in 2012 and 2013, Petty used the personal identifying information obtained from WRCBSS patients, including the seven victims named in the indictment, to obtain food stamp benefits in Florida. In 2014, Petty moved to Texas. Initially, Petty resided with her daughter Tyesha Petty ("Tyesha") in Mesquite, Texas, which is within the Northern District of Texas. Within a few weeks of moving to Texas, Petty obtained employment at Epic Health Services ("EHS"), where she had access to patient files containing personal identifying information for EHS patients in Texas. The testimony at trial established that Petty abruptly

7

moved out of Tyesha's apartment and left behind most of her personal belongings, including a box of documents Petty brought with her when she moved to Texas. Tyesha testified that Petty attempted to retrieve her belongings from Tyesha's apartment, but Tyesha did not return the box of documents to her mother. Instead, Tyesha took the box to the Mesquite Police Department. The Government introduced evidence that the box of documents contained WRCBSS patient files, receipts for Florida food stamp benefits in the names of WRCBSS patients, identifying information for other individuals, including Texas residents, and handwritten notes about the Texas food stamp program. This evidence provides a sufficient basis on which a reasonable jury could find, by a preponderance of the evidence, that Petty unlawfully possessed a means of identification of another person in the Northern District of Texas.

Additionally, the evidence is sufficient for a jury to reasonably conclude that Petty possessed the means of identification of another person in connection with food stamp fraud in this district. In Nevada, Petty obtained personal identifying information from WRCBSS patients and later used that information to fraudulently obtain Florida food stamp benefits. Petty brought the WRCBSS patient information and Florida EBT food stamps with her to the Northern District of Texas and kept that information and documents in a box with handwritten notes about Texas food stamp benefits. Petty also obtained a job at EHS in the Northern District, where she had access to patient personal identifying information that could be used to fraudulently apply for food stamp benefits. Indeed, the Government's witness, Special Agent Steve Romero, testified such information would be critical to successfully carrying out a scheme to commit food stamp fraud in Texas. The evidence also showed that Petty collected information about the Texas food stamp program. The box of documents Tyesha refused to return to Petty, and instead delivered to local law enforcement, included handwritten notes of "Texas Medicaid = Food Stamps," and

telephone numbers related to the Texas food stamp program, including telephone numbers for the Texas Medicaid system. Special Agent Matt Kirk testified at trial that persons desiring to obtain food stamps in Texas must first apply for Medicaid.

Petty argues that the evidence adduced at trial is not sufficient for a jury to find venue is proper in the Northern District. Petty focuses on evidence that she obtained food stamp benefits in the names of the seven victims identified in the indictment before she moved to Texas. She argues that her continued possession of these victims' personal identifying information in the Northern District of Texas is not sufficient to support a jury finding that she possessed that information in connection with any unlawful activity. She attempts to characterize the evidence of her continued unlawful possession as possession of evidence of a wholly completed crime, rather than an ongoing scheme to perpetuate food stamp fraud in several states. However, the evidence is sufficient to support a conclusion that Petty's scheme was not limited to Florida. The scheme began when Petty was working at WRCBSS in Nevada, and continued after Petty moved from Nevada and fraudulently obtained food stamp benefits in Florida. The evidence is also sufficient to support a conclusion that the scheme continued when Petty moved to Texas and that the documents Petty brought to Texas constituted not just evidence of a completed crime, but tools to perpetrate an ongoing unlawful scheme to continue food stamp fraud in the Northern District. Petty possessed the identities of the seven victims identified in the indictment, together with the other information contained in the box of documents delivered to the Mesquite Police Department, in connection with ongoing unlawful food stamp fraud.

The venue issue was central to the Government's prosecution of the case. The parties explored the issue with potential jurors during voir dire and elicited venue-related testimony from witnesses at trial. The Court's charge included specific instructions on venue, and counsel

argued the issue during their closing statements. With respect to each Count in the indictment, the jury specifically found that "[the] Government prove[d] by a preponderance of the evidence that some act in furtherance of the crime charged . . . took place in the Northern District of Texas." Upon reviewing the record, the Court determines that the evidence adduced at trial is sufficient to support the jury's finding on venue.

### IV. Conclusion

The Court concludes that the Government presented sufficient evidence at trial to prove by a preponderance of the evidence that Petty possessed, without lawful authority, a means of identification of another person in connection with food stamp fraud, which is a felony under applicable law. Accordingly, Petty's Rule 29 Motion for Judgment of Acquittal is **DENIED**.

Dated: January 17, 2018.

*[Signature]*
BARBARA M.G. LYNN
CHIEF JUDGE